IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PAMELA BONNITA LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-096 |
| | ) | |
| ANDREW SAUL, Commissioner of Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Pamela Bonnita Lewis appeals the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.      BACKGROUND

Plaintiff applied for DIB in July of 2017, alleging a disability onset date of May 31, 2016. Tr. ("R."), pp. 17, 237. Plaintiff's last insured date for purposes of the DIB application is December 31, 2020. R. 237, 271, 284. Plaintiff was forty-four years old on her alleged

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Andrew Saul, Commissioner of Social Security Administration, as the proper Defendant.

disability onset date.  R. 237.  Plaintiff applied for benefits based on allegations of obesity, lower back pain, migraines, endometriosis, arthralgia, post-traumatic stress disorder ("PTSD"), depression, knee pain, irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD"), stomach pain, and nausea.  R. 241.  Plaintiff has a twelfth-grade education and completed one year of college.  R. 242.  Prior to her alleged disability, Plaintiff had accrued relevant work history as a customer service representative and corrections officer.  R. 26, 242.

The Social Security Administration denied Plaintiff's applications initially, R. 143-47, and on reconsideration, R. 151-55.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 156-57, and the ALJ held a hearing on July 21, 2017.  R. 34-102.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Robert E. Brabham, Jr., M.R.C., CRC, a Vocational Expert ("VE").  Id.  On November 8, 2017, the ALJ issued an unfavorable decision.  R. 14-28.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 31, 2016, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant has the following severe impairments: lumbar spine disorder with radiculopathy; degenerative joint disease of the left knee; morbid obesity; intermittent migraine headaches; depression; and post-traumatic stress disorder (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b)[2] except: she is limited to performing simple, routine tasks, but is

---

[2]"Light work" is defined as work that involves:

able to maintain concentration, persistence, and pace to perform such tasks for two-hour increments without special supervision; must have no required interaction with the general public; is able to tolerate occasional interaction with coworkers; requires a low-stress environment, defined as an environment that does not require her to meet a rigid, inflexible production schedule such as piece rate or assembly line work, in an environment that is well-separated and not crowded, with no complex decisions, and must not require her to adapt to frequent changes, with any such changes also being gradually introduced; is able to stand and/or walk an aggregate of four hours in an eight-hour day; sit at least six hours of an eight-hour day; is able to occasionally stoop, twist, crouch, kneel, crawl, balance and climb ramps or stairs, but is never able to climb ladders, ropes, or scaffolds; must have no required exposure to unprotected heights, vibration, or dangerous machinery; and must have no required concentrated exposure to dust, fumes, gases, odors, or extremes of humidity or heat. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including production inspector, bottle line attendant, stuffer, and bench hand packer (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2016, through the date of the ALJ's decision (20 C.F.R. § 404.1520(g)).

R. 19-28.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ: (1) failed to properly evaluate her impairments; (2) determined her impairments do not meet or medically equal Listings 1.02, 1.04, and 12.04; (3) erred in evaluating her RFC by determining her subjective complaints were not consistent with the evidence of record; (4) (5) erred in deciding Plaintiff could perform the jobs listed at Step Five of the sequential process. See doc. no. 10 ("Pl.'s Br."). Plaintiff also appended recent treatment records as supplemental evidence to support her contentions. Id. at 13-17. The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed and argues Plaintiff is not entitled to a remand pursuant to sentence six of 42 U.S.C. § 405(g) based on her newly-submitted medical records. See doc. no. 12 ("Comm'r's Br."). For the reasons stated below, the Court finds the Commissioner's final decision should be affirmed.

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

### A.    The Sequential Evaluation Process

The Eleventh Circuit has outlined the five-step sequential process for evaluating a claim for disability benefits as follows:

1.    Is the individual performing substantial gainful activity;

2.      Does she have a severe impairment;

3.      Does she have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.      Can she perform her past relevant work; and

5.      Based on her age, education, and work experience, can she perform other work of the sort found in the national economy.

Phillip v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

At step one, if the claimant is doing substantial gainful activity, the process stops, and a claimant is determined to be "not disabled." Id. If the claimant is not doing substantial gainful activity, the process proceeds to step two. Id. In this case, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date, R. 19, and moved on to step two.

**B.      The ALJ Properly Evaluated Plaintiff's Impairments at Step Two**

The regulations instruct that a severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1522(a) and 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples include:

1.      Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2.      Capacities for seeing, hearing, and speaking;

3.      Understanding, carrying out, and remembering simple instructions;

4.      Use of judgment;

5.      Responding appropriately to supervision, co-workers and usual work situations; and

6

6.      Dealing with changes in a routine work setting.

Id.

However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014) (*per curiam*). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady v. Heckler, 724 F.2d 914 (11th Cir. 1984)). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id.

As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). Finally, "there is no need for an ALJ to identify every severe impairment at step two," and the complainant cannot demonstrate error at step two even if an ALJ fails to recognize a severe impairment if he or she considers all impairments, regardless of severity, in performing the latter steps of the sequential evaluation. Tuggerson-Brown, 572 F. App'x at 951.

To the extent Plaintiff challenges the ALJ's findings at step two, she is not entitled to remand on this basis. The ALJ specifically addressed each impairment Plaintiff raises in her

brief and determined several of Plaintiff's impairments constitute severe impairments. R. 19-20; Pl.'s Br., pp. 1-6. Thus, after determining at least one of Plaintiff's impairments was severe, the ALJ correctly continued on to the next step. Tuggerson-Brown, 572 F. App'x at 950-51.

### C. The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Impairments Did Not Meet or Medically Equal Listings 1.02, 1.04, or 12.04

Plaintiff argues her severe impairments met or medically equaled Listings 1.02, 1.04, and 12.04. Pl.'s Br., pp. 2-5. At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 404.1520(d).

#### 1. Listing 1.02

Listing 1.02 requires:

[A m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. The regulations define "inability to ambulate effectively" as "an extreme limitation of the ability to walk," generally "as having insufficient lower extremity functioning . . . to permit independent ambulation without use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00B2b(1).

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, [or] the inability to carry out routine ambulatory activities, such as shopping and banking . . . .

Id. at § 1.00B2b(2).

The ALJ determined Plaintiff's degenerative joint disease of the left knee does not meet Listing 1.02 because the evidence does not demonstrate an inability to ambulate as defined in the regulations. R. 20. Plaintiff does not point to any evidence in the record the ALJ failed to consider in making this determination. See generally Pl.'s Br. She only reiterates her subjective complaints as to her knees, which the ALJ considered in his decision. Id. at 2; R. 23. Moreover, substantial evidence supports the ALJ's determination Plaintiff was able to ambulate effectively

despite her degenerative joint disease of the left knee.

On May 9, 2017, Dr. Marian T. Ebron, M.D., noted Plaintiff was stable and walking unaided but may benefit from a rolling seated walker when ambulating outside her home. R. 1014. The same day, Plaintiff was issued a rolling seated walker. R. 996. Dr. Ebron's treatment note indicates Plaintiff did not use the walker for weight-bearing, would be able to lift it off the ground at least three feet while maintaining stable base of support, and has a functional reach of more than six inches while maintaining a stable base of support. R. 999. The note states Plaintiff only had "difficulty ambulating," not an inability to ambulate, and the walker improved her gait pattern by increased speed and step length and decreased step width. R. 1000.

At her June 6, 2017 aquatic rehab consultation, Faye Anderson-Mathis, kinesiotherapist, reported Plaintiff had good static and dynamic standing balance and an antalgic gait and could ambulate 500 feet before experiencing increased pain. R 1183. At the aquatic rehab consultation, Plaintiff walked without an assistive device and reported she has a walker but "does not like to use it." R. 1183. At the July 21, 2017 hearing, Plaintiff testified she drove herself to the hearing and was able to walk from her car to the building, a distance of approximately half a block, and back to her car before needing to rest. R. 51, 86-87. Plaintiff reported she uses her walker at the VA and occasionally when shopping but otherwise does not take it with her because it is "hard on her back and knees." R. 84.

Thus, the evidence indicates Plaintiff is able to effectively ambulate because she is able to independently ambulate without the use of an assistive device, walk at least a block before needing to rest, and carry out activities of daily living. Accordingly, the Court cannot say the ALJ's determination Plaintiff's impairments do not meet Listing 1.02 is not supported by substantial evidence.

## 2.    Listing 1.04

Listing 1.04 requires:

[A disorder] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.

The ALJ determined Plaintiff's impairments did not satisfy Listing 1.04 because (1) he did not find listing level nerve root compression; (2) there is no evidence of spinal arachnoiditis; and (3) there is no evidence of spinal stenosis resulting in pseudoclaudication or an inability to ambulate effectively. R. 20. Again, Plaintiff does not point to any evidence in the record to the contrary; she merely restates her subjective complaints, which the ALJ considered in his decision. Pl.'s Br., pp. 2, 7; R. 23.

First, Plaintiff's nerve root compression does not satisfy Paragraph A of Listing 1.04 because there is no indication of motor loss, sensory or reflex loss, or positive straight-leg raising tests. On January 10, 2017, Dr. John S. Clapp, M.D., reported full strength in hip flexion,

abduction, adduction, knee flexion and extension, ankle dorsiflexion and plantarflexion, eversion and great toe extension. R. 1162. Dr. Clapp also found the following as to Plaintiff's lumbar and lower extremities: (1) no sensory deficit to light touch; (2) active and symmetric deep tendon reflexes in the knee and ankle jerks bilaterally; (3) no muscle atrophy; and (4) negative straight leg raising in the seated position bilaterally. Id. Other than tenderness along the axial spine in the lumbar paraspinal muscle area, Dr. Clapp stated the physical exam was normal with some limitation in motion secondary to discomfort in the neck. Id.

On February 7, 2017, Allison M. Turner, physical therapist, noted increased lumbar lordosis and limited range of motion in Plaintiff's lumbar spine, but Plaintiff's distracted supine straight leg raising tests were negative bilaterally. R. 1032. Ms. Turner also noted Plaintiff's nerves were intact and no radicular symptoms were noted. Id. Finally, at her June 6, 2017 aquatic rehab consultation, muscle weakness was not noted as an active problem and Plaintiff's muscle strength was only mildly limited by her pain. R. 1182-83. Furthermore, by July 18, 2017, Plaintiff successfully completed four sessions of aquatic rehab. R. 1195-98. Thus, Plaintiff's most recent treatment notes at the time of the ALJ's decision support the ALJ's determination Plaintiff's nerve root compression did not result in motor loss, sensory or reflex loss, and positive straight-leg raising tests, as required by Paragraph A.

Second, as the ALJ states in his decision, there is no evidence of spinal arachnoiditis in the record whatsoever. Plaintiff cites nothing to the contrary. Thus, Plaintiff's impairments do not satisfy the Paragraph B criteria of Listing 1.04.

Finally, Plaintiff does not satisfy the Paragraph C criteria. Although Plaintiff was diagnosed with lumbosacral spondylosis, the diagnosis indicated Plaintiff did not suffer myelopathy, and there is no indication the degenerative changes in Plaintiff's spine resulted in

spinal stenosis, as required by Paragraph C, or any other type of spinal canal compression. R. 1104, 1108. However, even if Plaintiff suffers from lumbar spinal stenosis resulting in pseudoclaudication, as required by Paragraph C, she cannot satisfy the Paragraph C requirements because the record shows Plaintiff is able to ambulate effectively, as discussed in § III.C.1, *supra*. Accordingly, the ALJ's decision as to Listing 1.04 is supported by substantial evidence.

### 3. Listing 12.04

Listing 12.04 requires

A. Medical documentation of the requirements of paragraph 1 or 2:

    1. Depressive disorder, characterized by five or more of the following:
        a. Depressed mood;
        b. Diminished interest in almost all activities;
        c. Appetite disturbance with change in weight;
        d. Sleep disturbance;
        e. Observable psychomotor agitation or retardation;
        f. Decreased energy;
        g. Feelings of guilt or worthlessness;
        h. Difficulty concentrating or thinking; or
        i. Thoughts of death or suicide.

    2. Bipolar disorder, characterized by three or more of the following:
        a. Pressured speech;
        b. Flight of ideas;
        c. Inflated self-esteem;
        d. Decreased need for sleep;
        e. Distractibility;
        f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
        g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04.

Based on Plaintiff's subjective complaints and the objective evidence of record, the ALJ determined Plaintiff only had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 21. Accordingly, the ALJ determined Plaintiff did not meet the Paragraph B criteria for Listing 12.04. R. 22. The ALJ also determined Plaintiff did not meet the Paragraph C criteria because her mental disorder was not serious and persistent such that it resulted in minimal capacity to adapt to changes in her environment or demands not already part of her daily life. Id.

In her brief, Plaintiff does not specify what, if any, error the ALJ made in making these determinations or why she believes his decision is not based upon substantial evidence. Plaintiff merely states she meets all requirements of Listing 12.04 and describes her symptoms related to depression and PTSD, which include: (1) inability to interact with and trust others; (2) irritability, anger, and a propensity to overreact; (3) general disinterest in activities; and (4) inability to concentrate. Pl.'s Br., pp. 3-4. However, the ALJ explicitly considered these subjective complaints in his decision when determining Plaintiff's impairments did not satisfy

Paragraph B of Listing 12.04.  R. 21.

As to each area of mental functioning, the ALJ considered Plaintiff's subjective complaints and compared them to treatment notes, mental status examinations, and Plaintiff's additional statements and testimony and found only moderate limitations in these areas were warranted.  R. 21-22.  First, as to Plaintiff's ability to understand remember, or apply information, the ALJ's determined Plaintiff was no more than moderately limited because she was able to: (1) compensate by writing down information; (2) manage money; (3) understand information presented in group therapy settings; and (4) follow simple and complex commands. R. 21 (citing R. 262-70, 504).  Second, the ALJ determined Plaintiff was no more than moderately limited in interacting with others based on her  (1) occasional attendance at church; (2) never having been fired for social difficulties or inability to deal with supervisors appropriately; (3) cooperative attitude during mental status examinations; and (4) ability to interact with good eye contact.  Id. (citing R. 262-70, 510, 530, 587-98, 621).

Third, the ALJ determined Plaintiff was no more than moderately limited in concentrating, persisting, or maintaining paces based on her (1) reported inability to finish what she starts, concentrate, or read; (2) ability to drive independently; (3) remain attentive through group therapy sessions; and (4) exhibit logical and goal-oriented thoughts with no delusions during mental status examinations.  Id. (citing R. 262-70, 504, 510, 529, 621). Finally, as to Plaintiff's ability to adapt or manage herself, the ALJ determined Plaintiff was no more than moderately limited based on (1) her reports of visual and audible hallucinations; (2) the absence of signs of dissociation at medical appointments; (3) her attribution of difficulty with activities of personal care to her physical limitations; (4) mental status examinations describing her as neatly dressed and groomed; (5) ability to prepare simple meals and drive independently; (6) moderate

ability to handle stress; (7) difficulty handling change; and (8) ability to actively participate in management of her psychological symptoms through medication and therapy. Id. at 22-23 (citing R. 262-70, 510, 530, 587-98). The ALJ's detailed analysis of the Paragraph B criteria is based on a full consideration of the objective evidence of record, and his determinations are supported by substantial evidence.

Furthermore, the ALJ validly determined Plaintiff does not met the Paragraph C criteria of Listing 12.04. As described above, Paragraph C requires (1) a serious and persistent mental disorder, with a documented history of at least two years; (2) ongoing treatment that diminishes the signs and symptoms of the mental disorder; and (3) minimal capacity to adapt to changes in the claimant's environment or to demands not already part of daily life. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04.C. Plaintiff contends she has a documented history of treatment lasting more than two years. Pl.'s Br., p. 4. However, there is no evidence of record showing Plaintiff has minimal capacity to adapt to changes in her environment or to demands not already part of her daily life. Indeed, the ALJ determined Plaintiff has more than minimal capacity in this regard based on Plaintiff's ability to drive, prepare simple meals, handle stress, participate in management of her psychological symptoms, and, most importantly, handle change with only some difficulty. R. 22-23. Without establishing Plaintiff only has minimum capacity to adapt to changes and new demands, Plaintiff's mental disorder does not satisfy the Paragraph C criteria.

The ALJ's decision Plaintiff's impairments did not meet Listing 12.04 is supported by substantial evidence, and Plaintiff is not entitled to remand on this ground.

### D. The ALJ Properly Analyzed Plaintiff's Subjective Complaints in Determining her RFC

Plaintiff also argues the ALJ erred in assessing her subjective complaints as to her

impairments. Pl.'s Br., pp. 1-7. For the reasons stated below, the Court finds the ALJ properly analyzed Plaintiff's subjective complaints in relation to the objective medical evidence and determined Plaintiff's subjective complaints were not completely consistent with the objective evidence.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id.

When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."[3] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan

_____

[3]On March 16, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p eliminates the use of the term "credibility" and clarifies "subjective symptom evaluation is not an examination of an individual's character." Id. However, the change in terminology does not change the substance of the Court's analysis. See Waters v. Berryhill, CV 316-002, 2017 WL 694243, at *6, n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted by* 2017 WL 693275 (S.D. Ga. Feb. 21, 2017.)

v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[4] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). Finally, in conducting its review, the Court is mindful the question is not whether the ALJ could have reasonably credited Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (*per curiam*).

In her brief, Plaintiff merely restates the subjective complaints she testified to at the July 21, 2017 hearing regarding her impairments. Compare Pl.'s Br., pp. 1-7, with R. 60-62, 80-86, (back pain), 64-66, (knee pain), 66-69 (IBS and GERD), 70-72 (migraines), 72-73 (obesity), 74-80 (mental disorders). In his decision, the ALJ expressly considered Plaintiff's subjective complaints as to each impairment and determined Plaintiff's subjective complaints were not entirely consistent with the record based on extensive citations to the objective medical evidence contrary thereto. R. 21-26. Plaintiff does not point to objective evidence supporting her subjective complaints the ALJ did not consider or argue the ALJ failed to consider the subjective complaints raised in her brief. Indeed, the ALJ found Plaintiff's subjective complaints were partially consistent with the objective evidence of record and incorporated several limitations

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

into Plaintiff's RFC according to those complaints. R. 23.

The ALJ's decision shows he carefully compared Plaintiff's subjective complaints to the objective evidence to determine whether Plaintiff's medical conditions could be expected to give rise to the level of limitations she claimed. R. 23-26. The ALJ acknowledged Plaintiff's impairments, discussed the symptoms reasonably accepted to be consistent with Plaintiff's subjective complaints and the objective medical evidence, and limited Plaintiff's RFC accordingly. Although, as the ALJ found, Plaintiff's RFC is considerably limited based on her symptoms, disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r of Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012) (*per curiam*); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*per curiam*); 20 C.F.R. § 404.1520(e)-(f). Accordingly, the ALJ's finding Plaintiff's subjective complaints were not entirely consistent with the objective evidence of record is supported by substantial evidence, and Plaintiff is not entitled to relief on this ground.

Additionally, Plaintiff contends she experienced excruciating pain after water aerobics, cannot walk, stand, or sit for any prolonged period, and cannot kneel or stoop for any period of time. Pl.'s Br., p. 7. To the extent Plaintiff argues the ALJ's RFC is undermined by these contentions, there is substantial evidence to support the ALJ's findings as to these issues. First, Plaintiff testified at the hearing the water aerobics were "going okay," and her only complaint was her fear of water. R. 74. Plaintiff's testimony is consistent with the evidence of record, which contains no suggestion Plaintiff complained of pain following her water aerobics sessions.

1195-98. The ALJ cited this evidence in support of his decision. R. 24.

Second, the ALJ limited Plaintiff's RFC to standing and walking no more than four hours in an eight-hour day, sitting at least six hours in an eight-hour day, and only occasionally kneeling and stooping. R. 22. After considering Plaintiff's subjective complaints, R. 23, the ALJ cited recent medical records indicating Plaintiff had normal gain and strength and full range of motion. R. 24, 1161-62. The ALJ also cited Plaintiff's ability to perform water aerobics without difficulty. R. 24, 1195-98. Accordingly, the ALJ properly relied on the objective medical evidence related to these issues, and substantial evidence supports the RFC limitations imposed based on this evidence.

### E. The ALJ Properly Relied on the VE's Testimony

Plaintiff argues the ALJ erred at step five by relying on the VE's testimony because the limitations incorporated into her RFC would prevent her from performing the occupations identified by the VE. Pl.'s Br., pp. 7-11. In support, Plaintiff included in her brief job listings with the same title as the occupations listed by the VE, which she argues contain job requirements inconsistent with her limitations. Id.

If a claimant shows at step four her impairment prevents her from performing her past relevant work, the evaluation proceeds to step five, where the burden shift to the SSA "'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983)). "Although the burden temporarily shifts as step five 'the overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionable rests with the claimant.'" Id. (quoting Doughty v. Apfel, 245 F.3d

1274, 1280 11th Cir. 2001)).

In making the step five determination whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of her impairments, the ALJ may consider the testimony of the VE and data drawn from the Department of Labor's Dictionary of Occupational Titles ("DOT"), of which the Social Security Administration takes notice. Id. at 1360 (citing 20 C.F.R. § 416.966).

In relying on the testimony of a VE, the underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).) Where the VE's testimony is based on a hypothetical question including limitations from the RFC finding and the RFC is supported by the record evidence, the VE's testimony supports the ALJ's decision. Carroll v. Soc. Sec. Admin., Comm'r, 453. F. App'x 899, 894-5 (11th Cir. 2011).

Finally, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." Washington, 906 F.3d at 1362. Put another way, an ALJ has an affirmative duty to "identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." Id. at 1365. Failure to do so means

the ALJ's decision is not supported by substantial evidence.  Id. at 1362.

At the July 21, 2017 hearing, the ALJ posed the following hypothetical to the VE:

> If you will assume please the presence of an individual of the approximate age, education, past work experience as [Plaintiff] with these limitations . . . limited to performing simple routine tasks, but is able to maintain concentration, persistence, and pace in order to perform such tasks for at least two hours at a time without special supervision; should have no required interaction with the general public; and no more than occasional interaction with coworkers; would be most successful in a low-stress environment.  And by low-stress environment, I'm envisioning one that is where the individual does not have to meet a rigid and flexible [sic] production schedule such as piece rate work or assembly line work in a well-separated or not isolated exactly, but at least not a crowded work environment; should not have to make complex decisions at the workplace.  She should not have to adapt to frequent changes at the workplace.  The changes should not only be infrequent, they should be gradually introduced.  No lifting or carrying over 20 pounds occasionally, 10 pounds frequently; no standing or walking over an aggregate of four hours in an eight-hour workday.  There is no specific limitation on sitting, but would presume that the individual would be able to sit at least six hours out of an eight-hour day.  No more than occasional stooping, crawling, twisting, balancing, crouching, kneeling, or climbing of stairs or ramps; no climbing of ladders, ropes, or scaffolds; no required exposure to unprotected heights, vibration, or dangerous machinery; no required concentrated exposure to dust, fumes, gases, odors, or extremes of humidity or heat.

R. 94-96.  The VE testified a person with those characteristics and limitations would not be able to perform Plaintiff's past work but would be able to work as a production inspector (DOT 222.687-042) or bottle line attendant (DOT 920.687-042), which are light-exertion occupations, or as a machine tender (DOT 731.685-014) or bench hand packer (DOT 715.684-026), which are sedentary occupations.  R. 96-97.  The VE testified approximately 725,000 jobs exist for these occupations in the national economy.  Id.

The VE testified his opinion as to the light occupations assumed the hypothetical individual would have the opportunity to change positions while working; i.e., a "sit/stand option," which is not addressed by the DOT.  Id.  Nevertheless, the VE testified the "sit/stand option" is not inconsistent with the DOT and his testimony is consistent with the DOT and

based on his professional experience. R. 97. In his decision, the ALJ determined, pursuant to SSR 00-4p, the VE's testimony is consistent with the information contained in the DOT and concluded there are significant numbers of jobs in the national economy Plaintiff can perform based on the VE's testimony. R. 26-28.

The ALJ's reliance on the VE's testimony and step five conclusions are supported by substantial evidence because: (1) ALJ's hypothetical was consistent with Plaintiff's RFC; (2) the RFC is supported by substantial evidence; and (3) the VE's testimony is consistent with the DOT. Carroll, 453. F. App'x at 894-5; Washington, 906 F.3d at 1362.

First, the ALJ's hypothetical posed to the VE contains all of the limitations the ALJ incorporated into Plaintiff's RFC in his decision. See R. 22, 94-96. Indeed, the limitations in the hypothetical and RFC are identical, except the hypothetical contained the additional limitation of "no lifting or carrying over 20 pounds occasionally [and] 10 pounds frequently." R. 95. However, the inclusion of an additional limitation in the hypothetical not included in the RFC shows Plaintiff would still have been able to perform the occupations listed by the VE if the additional limitation had been included in the RFC. Second, as described in § III.D., supra, the ALJ's finding as to Plaintiff's RFC is supported by substantial evidence.

Finally, the VE's testimony is consistent with the DOT. The DOT entries for the occupations identified by the VE are as follows:

> **222.687-042 INSPECTOR, HANDBAG FRAMES (leather prod.) alternate titles: frame opener:** Inspects metal or plastic frames used in manufacture of women's handbags: Removes frames from packing case and verifies order with invoice and shipping order. Examines frames for defects, such as scratches, discolorations, or missing hinge pins. Opens and closes frames to test frame construction and ease of fastening. Discards defective frames for repair or return to manufacturer. Compiles inventory of acceptable and unacceptable frames received.

See DOT § 222-687-042, 1991 WL 672138 (2016)

**920.687-042 BOTTLING-LINE ATTENDANT (beverage) alternate titles: line operator**: Prepares filled whiskey bottles for packing and shipping, performing any combination of following duties: Pastes labels and tax stamps on filled whiskey bottles as bottles pass on conveyor. Examines bottles to ascertain that labels and stamps have been correctly applied. Straightens labels and stamps on bottles. Presses stamps on necks of bottles. Wipes excess glue and moisture from bottles. Packs whiskey bottles into cartons. Pastes identification labels on cartons. May be known according to task performed as Bottle-Label Inspector (beverage); Stamp Presser (beverage); Strip-Stamp Straightener (beverage).

See DOT § 920.687-042, 1991 WL 687971 (2016).

**731.685-014 STUFFER (toy-sport equip.) alternate titles: blower; toy stuffer**: Tends machine that blows filler into stuffed-toy shells: Inserts precut supporting wire into shell. Places shell opening over stuffing machine nozzle. Depresses pedal to blow cotton or chopped foam rubber filler into shell to impart shape to toy. Places stuffed toy in tote box. Records production. May stuff toys by hand.

See DOT § 731.685-014, 1991 WL 679811 (2016).

**715.684-026 BENCH HAND (clock & watch)**: Positions screws in rims of balance wheels and secures screws in place, using screwdriver.

See DOT § 715.684-024, 1991 WL 679344 (2016).  All of the occupations are limited to repetitive, short-cycled work, and none require any amount of climbing, balancing, kneeling, crouching, or crawling.  Stooping is only occasionally required by the handbag frame inspector, but never required by the other occupations.  None require exposure to extreme heat or humidity, vibration, moving mechanical parts, high exposed places, toxic caustic chemicals, or other environmental conditions.  The occupations require, at most, the ability to deal with problems involving few concrete variables in or from standardized situations and the ability to carry out detailed but uninvolved written or oral instructions.  Furthermore, the sedentary jobs; i.e., stuffer and bench hand, involve sitting most of the time, and walking or standing only for brief periods

of time. The light jobs; i.e. bottling-line attendant and handbag frame inspector, are listed as light-exertion because they require the constant pushing and/or pulling of materials of negligible weight, not because of any standing or walking requirements. Thus, based on careful review of these occupation requirements as set forth in the DOT, there is no apparent inconsistency, between the VE's testimony based on the ALJ's hypothetical and the information contained in the DOT.

Plaintiff's reliance on the specific job listings contained in her brief is misguided. The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." Washington, 906 F.3d at 1356, n.2. That some individual employers or job descriptions may require additional abilities for similarly-titled positions does not undermine the VE's reliance on the information contained in the DOT or the ALJ's reliance on the VE's testimony based the DOT. Accordingly, the ALJ properly relied on the VE's testimony, and Plaintiff is not entitled to remand on this basis.

**F.     Plaintiff is Not Entitled to Remand Pursuant to Sentence Six**

Finally, Plaintiff submits several pages of medical records, which are not part of the administrative record. Pl.'s Br., pp. 13-17. Defendant argues the additional evidence does not warrant remand pursuant to sentence six of § 405(g). Comm'r's Br., pp. 15-17.

Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Social Sec., 457 F. App'x 850, 853 (11th Cir. 2012) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a

reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable."). In order to demonstrate that remand is appropriate, a claimant must show: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)). In order to be material, new evidence must relate to the period on or before the date of the ALJ's decision. See Id. at 863 (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (providing that, in order to be probative of whether person was disabled during the period under review, evidence must relate to that period)); Lipscomb v. Comm'r of Soc. Sec., F. App'x 903, 907 (11th Cir. 2006) (questionnaire related to period under consideration by ALJ because answers based on treatment records from relevant period).

Remand is not warranted because Plaintiff's supplemental evidence relates to the period after the ALJ's November 8, 2017 decision. The dated portions of the supplemental treatment notes indicated they were created on or after February 8, 2018, more than six months after the July 21, 2017 hearing and three months after the ALJ's decision. Pl.'s Br., pp. 13-17; R. 17. Furthermore, the treatment notes explicitly indicate a worsening of Plaintiff's condition in the interim period not under review by the ALJ at the time he issued his decision. Pl.'s Br., pp. 13-17; Hubbard v. Comm'r of Soc. Sec., 618 F. App'x 643, 651 (11th Cir. 2015) (holding supplemental evidence of worsening conditions created after ALJ's decision was not relevant to appeal, even if it would be relevant to a subsequent DIB application).

Moreover, to the extent any of the supplemental records precede either the ALJ or AC's decisions, Plaintiff has failed to provide any basis to support a finding of good cause for the failure to submit the evidence at the administrative level. _Enix_, 461 F. App'x at 865. Accordingly, remand pursuant to sentence six of § 405(g) is not warranted based on Plaintiff's supplemental evidence.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 9th day of July, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA